It pleases the court. I'm Karen Landau and I represent Brian Stone and I'll save two minutes for rebuttal. The question before this court is whether really whether a void for fraud clause in an insurance contract or an insurance policy is sufficient to impose a restitutionary loss of the entire amount of a claim that's paid out. Restitution is limited. It's limited to actual losses and there's a causation requirement. The defendant's conduct has to have caused a loss or in the case of a scheme or conspiracy, the loss has to stem from the co-conspirator or the co-schemer and it has to be reasonably foreseeable. Now in this case, in the brief, I identified losses were imposed for three properties, one of which we don't contest, the Fulton Street property. Yes, Judge Lee? Oh, I'm sorry. I thought you were going to ask a question because the square lit up. So anyway, I'll do my best with this method. It is a little bit awkward. It's like Hollywood Square. Yeah, exactly. So in this case, there's two properties and the most noteworthy, I think, is the loss that was accorded on the Marconi property of $88,000. The investigative reports show that the loss, first of all, the fire was not even an arson. It was an accidental fire and the holder of the policy had legitimate losses. He testified that he had a legitimate business. Now there were some false claims in that loss, but they were a small subset of the total loss. Yet the district court held Mr. Stone accountable for the entire loss, the entire payment. I shouldn't call it a loss of $88,000. And the thing is, is that the insurance company, the fire occurred. It's an accidental fire. There's no evidence that it was an arson. So there were legitimate losses that the insurance company was going to have to pay out. Was there evidence that any of the insurance companies would have invoked their fraud for void provision? Well, there was testimony from the insurance company representatives that they had a void for fraud clause and that they wouldn't have paid the loss. But that doesn't make this a restitutionary loss. And I think one thing that we can look at is the difference between a loss calculation and restitution, which is that under the guidelines, we focus on the greater of intended or actual loss. But restitution is actual loss. It's not, oh, the insurance company might have invoked the void for fraud clause. And it's kind of noteworthy because, in fact, one of the payments for which restitution was ordered, the century insurance loss, which pertained to the 511 Broadway property, the insurance company essentially said, yeah, we were suspicious about this, but it was too expensive to investigate, so we paid. Right. So that's my question. The evidence presented to the district court wasn't that we would have invoked the void for loss. It just simply says, from my recollection, it was in cases of fraud, we can invoke that clause. That's right. That's absolutely correct. And I think the critical point here is, I mean, honestly, if this hadn't been a case under which the arson cross-reference applied, I would have challenged intended loss as well. But we didn't because there was no point because I did not think that was worth arguing. But I think the key here, again, is restitution is actual losses only and there is a causation requirement. But, counsel, did you argue that below, that there was no evidence to support that the insurance companies would have invoked the void for fraud clause? Because my understanding is that your arguments below were just that it didn't stem from your client's particular actions in the scheme. So should we apply plain error here? Well, there's two answers to that. First, well, there's three, actually. First, I wasn't counsel below. Oh, sorry. But that's not relevant. Second, if you look at the, and it's in excerpts of record, it's ECF 348. It's in excerpts of record, Volume 3, starting at 291. The objections to the pre-sentence report. Counsel specifically argued that there was no loss attributable to anyone as far as the Marconi property. And I think that fairly encompasses a claim that there's no causation, which is really the argument we're making here. He said it wasn't an arson. There wasn't a loss. He didn't specifically challenge the void for fraud issue, but it did come up. I have a question. Oh, I'm sorry. I do have a third. Can I just finish? I have a question. The third answer is that the government didn't raise the issue of plain error. So I would argue it's whipped. And, yes, Judge Steiler. Yes, I had a question about, you said some of the claims on this Marconi property were false claims. What did they, what sort of false claims? Well, the submission of the claim, this was a claim for lost business income and damage to equipment principally. And because it was a leasehold, it wasn't that he owned the building. So there were, he claimed, there was a claim in there for rental fees for laser hair removal machines. And the government presented evidence that, in fact, they didn't pay for the laser hair removal machines. Therefore, there shouldn't have been a claim in there. That totaled approximately $18,000. Hartford paid out $88,000. So, obviously, there's a big difference there. So you admit there is a loss, but not as great as the court allowed, right? That's correct. I also think that there's no showing that it's not clear what the $88,000 included, whether, in fact, included the payment for the laser hair removal, or it was, I mean, there was no breakdown. The government submitted the itemized loss claims, but the claim, as I recall, was actually, like the claim made to Hartford was greater than $88,000, but they paid out $88,000. So then the question is, what portion of that is attributable to the false claim? But counsel, since there was, oh, go ahead, Judge Shiloh. I'm just going to ask, what's the university fire? Was it included here in the restitution, or does that have to go back and be re-computed? No, the university fire was not included. Mr. Stone was not held accountable for that. Was not held accountable for restitution for that, I should say. Okay. It was just the three properties, or if it was, honestly, if it was, I didn't challenge it. Okay. Counsel, I agree with you that it doesn't seem like the district court gave many reasons on the causation front, but since there was no objection, I don't know if that's necessary. Was it necessary for the district court to go through the causation analysis since there was no objection? Well, again, Your Honor, I would submit that the challenging, the pointing out that there wasn't an arsonist to one of the fires, and the other thing is, I can see you perhaps don't agree with me, but I think that's a point. The other thing, let me add that with regard to the Broadway fire, counsel said, well, there's an inadequate nexus, and when you say there's an inadequate nexus, I think what he's saying is there's not enough between Mr. Stone and the amounts paid out to impose restitutionary loss. If there's nothing further, I'll save my minute for rebuttal. I do have one question here, and you can answer this in rebuttal because this issue wasn't raised in the briefs, so you probably won't know the details in the record, but the responses to the objections to the PSR, it stated, all recommended restitution amounts will remain except for the Marconi fire, and when we looked at the amounts, it looks like it excluded the University property, not the Marconi. If you can take a look at that. Your Honor, I actually did look at that, and my reading of the record is that the Marconi, I know that the pre-sentence report said that, but the reading that the amounts seem to show that the Marconi fire was included, and that's why I challenged it in the way that I did, but I did look at that last night, actually, and I remember going over that when I wrote the brief, and I think that the, I think what appears to me is the court simply, either the, you know, it's possible the probation officer made a mistake, but I just don't think the change was made. I'm sure Mr. Hales can correct me if I'm wrong. All right. Well, so I'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Hales. Thank you, Your Honor. May it please the Court, Your Honor, it's Christopher Hales for Apple Leaf United States of America. I'll pick up right where we left off. I think that reference in the PSR to Marconi is a typo because originally University was included in the restitution amount, and it was removed in the final PSR, and I think where it says that Marconi wasn't included, it should have said that University wasn't included. So what ended up happening in the restitution amount is, yes, Marconi was included, and University was not because the government did not pursue, ultimately, University as part of the restitution claim. And that would have been in Stone's favor, right? Because I think the loss from University was greater. That's correct, Your Honor. It was greater, and Mr. Stone did have, there was sentencing evidence that Mr. Stone was trying to contact the landlord of the University property before that property burned as well. But after that, we didn't have the same type of evidence of his involvement in the insurance claims, as Your Honors have seen with Marconi and Broadway. It was in the sentencing record here. And Judge Bumate, to get to something that you were asking about a moment ago, it is the case that, you know, in the sentencing process below, there was no argument from the defense trying to break apart different amounts for Marconi and Broadway. The arguments were essentially for Broadway, as Ms. Landau said, there was no nexus. And then for Marconi, that it simply wasn't an arson. But the arguments didn't address, well, was there fraud in those claims? And if so, was that reasonably foreseeable to Mr. Stone? And if so, did that cause the insurers to forego this right they had to deny the claim in its entirety if there was substantial bad faith or fraud in connection with these claims? And moving on to the bigger picture issue where we started out, which is... Before you move on, so counsel says that you waived any plain error analysis. Do you agree with that, that we should not apply plain error to that question? I agree that we state in our brief that the proper standards are abusive discretion for the restitution amount and I believe clear error for the findings of fact. The just very discrete issue that Your Honor was identifying, I mean, that wasn't raised below and so typically the proper standard would be plain error. But I agree that we didn't argue that that discrete piece was plain error in our brief. On this bigger issue of whether it was reasonable to count the entire amount of these insurance claims, it was, and the trial evidence showed that, and specifically with respect to Fulton, what we had was an insurance claim where there were a variety of different things that they were seeking, but when Scott Johnson, who was the investigator for State Farm, found out about the fraud that Brian Stone was trying to commit and found out that Jamal Shaheda was involved with this fire and was asking the nominee owner about the fact that Shaheda had 34 prior insurance claims, the ultimate effect of all that was that State Farm only paid out $3,000 and that was only for the initial board up of the windows and there were no further payments despite everything that they were seeking. So I think based on that trial record, it was reasonable for the court to conclude here that it was likely that the other insurers would have denied these claims if they had found out about the fraud that the defense here is conceding did happen in the Marconi and the Broadway claims. But isn't that way too speculative that there's no evidence that in these particular cases the insurance companies would have invoked that clause, correct? There is no direct evidence of that for the other two claims in the sense that they didn't find out about the fraud that had happened. There is an interview with the Century Surety Vice President of Claims where he says we can deny the claim if there is substantial evidence of bad faith and I think the concealment of the fraud that Mr. Stone engaged in here with Mr. Shaheda, when the VP of Claims talked about the costs that are involved in invoking a clause like that, that demonstrates how what they did caused the insurance company to forego this contractual right they had to deny the claim out, right, because they engaged in this fraud. And I think it's reasonable based on the trial evidence to say the insurers wouldn't have paid money out if they had known that there was fraud all over these insurance claims at the time like happened with the Fulton County State Farm claims. But, you know, obviously the evidence would have been much stronger if there was some sort of declaration that we would have invoked this clause, right, and there's nothing like that for the two other fires. I agree that's correct, Your Honor. I think the record would have been more full on that point had the issue actually been raised below. But this particular issue wasn't, and so what the government's response to the defendant's formal objections, which is in the court record at 352, what the government addressed there was the issues the defendant had raised. Was there a nexus between Stone's conduct and the Broadway fire? Yes, there was. He was involved in coordinating false statements about the rental payments between Mr. Patel and Mr. Shaheda. He also was essentially giving Jamal Shaheda ghostwritten instructions on how others could threaten to sue Mr. Shaheda to get more money out of this insurance claim. So we addressed that issue. Is there something in the record that shows the breakdown of how the insurance paid for, which part of the claims the insurance paid for for the Century and the Hartford? We have the amounts, 88,000, 152,000. Is there something in the record that shows they were paying for, you know, whatever it is, you know, EI or property damage? Is there anything that breaks it down? No, Your Honor, there isn't that in the record, and I don't want to get too far outside the record here, but there are, from what you see in the payments, there are some inferences that you can make. For example, the initial payment on the Marconi fire of $20,000, which is in excerpts 288, that comes pretty quickly after the fire before there's any inventory. So sometimes in the initial stages of these claims, what you see from that is that monies are going out before there has been a specific itemized list. But what you can't see timing-wise is that in December of 2012, for example, on Marconi, you have the inventory go in, including those laser hair machines, and I'd like to correct that. The amounts on the laser hair machines were $50,000, and you see that going in on December 10th and 11th, and then it's within a week that the second payment goes out to Iman Roslan, who's the nominee in that insurance claim, and that payment was for $31,000. But getting back to your specific question, do we have an itemization of what specifically that $31,000 was for? No, we don't have that. That raises a question of how we can figure out in terms of whether the insurer would have avoided the coverage for fraud. So just hypothetically, if there was a legitimate claim that was submitted first and insured to pay for that, and then the second claim was a fraudulent one, perhaps maybe the insurer would have avoided coverage for that second fraudulent claim. But, I mean, would we know if they would somehow try to claw back the first legitimate claim? I guess that's the difficulty here is given the record now, I mean, it's a bit hard to figure that out. It is, and it's very counterfactual. I mean, one thing I would point the court to in that regard is one thing Mr. Stone did on the Broadway fire is to conceal Mr. Stone's—I'm sorry, on the Marconi fire was to conceal Mr. Shaheda's involvement in that by blind carbon copying him on an email to the insurance company. And by contrast, when State Farm knows that Jamal Shaheda is involved with the insurance claim, they are asking the nominee about the fact that he's got 34 other fire insurance claims and then the payment shut down. So I think it's a fair inference from the record that we do have since the companies didn't know and we can't show affirmative things what they would have done had they known in that respect. It's a fair conclusion that they would have investigated further. In fact, that's what the century surety vice president said is they would have investigated further if they knew about fraud involved with these claims. And beyond that, that they would have exercised their option not to pay out on these claims. I have a question on this. What is the position of the government on this that it should be denied the motion to remand here or do you agree with that? It should go back down and let the district court compute all these figures. Your Honor, the government's position is that no remand is necessary, that these restitution amounts are supported by the record, including the evidence of the trial and what happened with that particular insurance claim. If Your Honors have no further questions, I'm prepared to submit on behalf of the government. Thank you. Thank you, Your Honor. I can have a couple minutes for rebuttal. Okay. Well, Your Honor, I just wanted to point to a couple of things as far as what the record shows. One of the things about the Broadway fire is that, again, and this goes to causation, is that what the government's exhibits show to my reading is that the claim was paid out and then Shaheda and Mr. Stone attempted to get involved and get some more money. And it's pointed out, it's in the briefs, that money was not paid out in response to those efforts. And, again, as far as the laser hair machines, which are part of the Marconi fire, my understanding is that the rental amount was what they sought. And, again, there was some evidence that Shaheda tried to get documentation after the fact to claim the machines themselves, but that never happened. That didn't come to fruition. As far as, again, as far as, you know, the question of what the – and I think the key here, again, is to go back to what restitution requires, and it simply wasn't met here. I mean, I think even if you review for plain error, which, again, I would argue is waived, the losses, there's simply inadequate evidence to support the amounts imposed. And the – and, you know, what Mr. Stone should be held liable for are the losses that the insurance company actually submitted, actually suffered, which is not the entire amount they paid. And finally – well, and I'll leave – I do have a 28-J letter to submit, but I'll leave that for my 28-J letter. Thank you, Your Honor. Thank you. The case has been submitted.
judges: Siler, Lee, Bumatay